346 A.2d 757
COMMONWEALTH of Pennsylvania
v.
Elmer Carlos SMITH, Appellant.

Supreme Court of Pennsylvania.

Submitted June 23, 1975.

Decided Oct. 30, 1975.

316

Nino V. Tinari, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This direct appeal[1] follows a jury trial in which appellant was found guilty of murder in the second degree. A sentence of 5 to 20 years was imposed. We affirm.

During the late evening and early morning hours of July 3 and 4, 1971, decedent and his friend were in the area of 32nd and York Streets in Philadelphia. Decedent walked over to a man named Tinsley and placed his arm around his neck and shoulders. Within a few moments, appellant approached and shot decedent. It is undisputed that appellant was the killer. He claims, however, that (1) the discharge of the gun was accidental, and (2) decedent was threatening Tinsley and that appellant came to Tinsley's defense.

██ At the opening of trial the defense moved for sequestration of the witnesses. The Commonwealth agreed, and all but one[2] of the witnesses were ordered

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975).

2. A detective who investigated the crime was permitted to remain in the courtroom in order to assist the district attorney prosecuting the case. No objection concerning this exception to the sequestration order is raised.

sequestered. The Commonwealth presented three eyewitnesses to the killing. On cross-examination, the third eyewitness, Jesse Scott, gave testimony which indicated that the prosecutor had violated the sequestration order by reviewing the testimony of the other two eyewitnesses with Scott. That violation [3] is the basis of this appeal.

The violation of the sequestration order was elicited by defense counsel at the opening of his cross-examination. After discovering the violation, however, he dropped the subject and conducted a thorough cross-examination of the witness. At the end of this cross-examination the defense moved for a mistrial and, upon denial of that motion, moved to have Scott's testimony stricken. Both motions were denied.

■ The Commonwealth contends that the delay between discovery of the violation and defense motions based upon the violation waived any objection that the defense might have made. We do not agree.

■ When the party offering a witness has violated a sequestration order and has already conducted direct examination before the jury, the opponent, under the waiver rule urged by the Commonwealth, would be faced with an impossible choice if the trial court refused to grant a mistrial.[4] Once the violation of the order is brought out

3. Although the record concerning the violation of the sequestration order is not ample, we must accept the trial court's finding supported, as it is, by substantial evidence that a violation did, in fact, occur. "This Court does not sit as a trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is only a task for a trial court and we would never invade that area of the judicial process." *Reed v. Universal C. I. T. Credit Corp.,* 434 Pa. 212, 217, 253 A.2d 101, 104 (1969). Therefore we do not address whether there was a violation of the order. The trial court found a violation, and we accept that finding.

4. Obviously, upon learning of the violation of the sequestration order, counsel could move for a mistrial without encountering the risks described in the text. However, we impose no such requirement. A motion for a mistrial made at the close of cross-examination, under the facts as given here, is timely under Pa.R.Crim. P. 1118.

and a motion for a mistrial is denied, the opposing party may either move to strike the testimony, and risk letting the untested direct examination lay in the juror's subconscious minds if the motion is granted, or he may continue his cross-examination, but, according to the Commonwealth's proposed rule, waive a motion to strike based on the violation. The effect of the Commonwealth's rule is to eliminate, so far as the particular witness is concerned, the benefits of the sequestration order or cross-examination, "the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice." [5] To accept the Commonwealth's contention would be to compound its violation of a sequestration order with the imposition of an unjustified waiver. This we refuse to do.

The Commonwealth's proposed waiver rule is inappropriate for a second reason. The waiver doctrine was developed to compel trial counsel to present objections to the trial court. If presented early enough, the trial court is often able to correct a trial error and thus to avoid unnecessary appeals. Counsel may not sit idly by while what would have been correctible errors occur only to raise those errors on appeal as ground for reversal. Thus delay in presenting objections, which prevents the trial courts from correcting reversible error results in waiver of those objections. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

The application of the waiver doctrine to this fact situation is clearly inappropriate. Defense counsel substantially completed his cross-examination before moving for a mistrial or to strike the witness' testimony. If the mistrial had been granted, the only loss would have been the time spent on cross-examination. This is hardly such a loss as would justify a waiver being im-

5.  *Commonwealth v. Turner*, 389 Pa. 239, 264, 133 A.2d 187, 199 (1957), quoting VI Wigmore on Evidence § 1838, at 352 (3d ed. 1940).

posed on a litigant. If, on the other hand, the motion for a mistrial had been denied, but the motion to strike had been granted, the effect of the delay would have been that the jury would be directed to forget both the direct and the cross-examination. Because a jury is not absolutely able, despite the most sincere efforts, to put relevant facts completely out of its mind, the testing of the direct examination by cross-examination is a sufficiently worthwhile benefit to offset the delay in presenting the motions. In neither event is the time spent on cross-examination sufficient to justify imposition of a waiver on the party offended by the violation of the sequestration order.

We therefore hold that where, as here, the violation of a sequestration order is revealed at the beginning of cross-examination, there is no waiver in counsel's making motions based on the violation at the end of his cross-examination of the witness.[6]

Because there was no waiver, we must address the trial court's responses to counsel's objections. Defense counsel moved for a mistrial and moved to have Scott's testimony stricken from the record. Both motions were denied without comment. Defense counsel requested no cautionary instruction and none was given. To prevail on this appeal, appellant must demonstrate that it was error for the trial court not to grant relief on one of the two motions made.

The selection of a remedy for the violation of a sequestration order is within the sound discretion of the trial court. See *Commonwealth v. Martin*, 440 Pa. 150, 153, 269 A.2d 722, 723 (1970); *Commonwealth v. Turner*, 389 Pa. 239, 264, 133 A.2d 187, 199 (1957). In exer-

6. We are strengthened in our conclusion by the ease with which counsel could avoid the Commonwealth's proposed waiver by simply waiting until the end of cross-examination to question a witness concerning violations of a sequestration order. Courts do not sit to impose empty formalities on unwary litigants.

cising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken.

Here there is support for the trial court's refusal to grant the defense motions. The court had heard the examination of the witness and therefore knew that Scott was one of three eyewitnesses to the killing, and that his testimony was the most favorable to the appellant of the three. Furthermore, the court was aware from cross-examination that Scott's testimony did not conflict in any relevant part with a statement Scott had given the police at the time of the killing. The court therefore had reason to believe that Scott's testimony was not altered as a result of the violation of the sequestration order.

Moreover, the fact of the violation was shown in cross-examination and the court referred to it in its summary of the evidence for the jury. Although no cautionary instruction was given at any time after the violation came to light, none was requested. The jury was thus aware of the violation and its possible impact on the witness' testimony. On this basis the trial court could conclude that the jury took the violation of the sequestration order into account when weighing Scott's testimony. In these circumstances we find that the trial court committed no error in refusing to declare a mistrial or in refusing to strike Scott's testimony.

Judgment of sentence affirmed.

POMEROY, J., filed a concurring opinion, in which NIX, J., joins.

POMEROY, Justice (concurring).

I agree that under the circumstances shown by this record the trial court committed no abuse of discretion in

refusing to declare a mistrial and in refusing to strike the testimony of the witness Scott. I therefore concur in the order of affirmance. I add this separate statement because I cannot accept the Court's purported holding that no waiver of a discovered sequestration violation occurs when counsel deliberately delays making a motion for mistrial on such grounds until he has concluded his cross-examination of the witness as to whom the violation occurred. This portion of the Court's opinion is in the teeth of the express provision of Rule 1118(b) of our Rules of Criminal Procedure, which provides as follows:

When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; *the motion shall be made when the event is disclosed.* Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity. (Emphasis supplied)

The mandatory aspect of the time when mistrial motions are to be made is manifest. The rule is not to be followed or ignored with impunity, as trial counsel chooses, depending on the nature of the episode which gives rise to the claim of mistrial. If a mistrial motion is timely made and granted, that, of course, is an end to the matter. If the motion is denied, cross-examination may then be carried on to completion with assurance that the court's ruling will afford ground for a new trial if discretion is found to have been abused. I am unable to perceive the "impossible choice" with which the Court states defense counsel was presented in this case.

NIX, J., joins in this concurring opinion.