J-S19011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHEED GEY A/K/A/ RASHEED GUY | |
| Appellant | No. 1341 EDA 2014 |

Appeal from the Judgment of Sentence entered August 14, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005679-2012

BEFORE:  STABILE, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 20, 2015**

Rasheed Gey, a/k/a Rasheed Guy, appeals *nunc pro tunc* from the judgment of sentence entered for his conviction of first-degree murder.  On appeal, he challenges the sufficiency of the evidence and a trial court ruling that permitted a witness to testify even though she violated a witness sequestration order.  We affirm.

On the afternoon of February 6, 2012, Vertrice Robinson and Dennis Gore were walking home from a corner store located at 55th and Lansdowne Streets in Philadelphia.[1]  As they walked west on Hunter Street, Appellant, clad in a grey hooded sweatshirt and jeans, approached them.  He walked

---

[1] This factual summary is taken from the trial court's June 23, 2014 opinion and the notes of testimony of trial.

up until he was face-to-face with Gore, drew a silver firearm, and shot Gore multiple times in the chest. Gore fell to the ground. Appellant stood over Gore and fired several more rounds into his body. Robinson took cover behind a parked car, and Appellant fled west on Hunter Street, toward Allison Street.

Tanya Brown heard the gunshots from inside her home, and ran outside. Appellant, whom Brown had known for about a year, ran by brandishing a firearm. She ran to where Gore's body lay with Robinson next to him. Brown, an Army nurse, provided what assistance she could until paramedics arrived.

Willie Wyche was standing on the corner of Allison and Lansdowne Streets. He heard four or five gunshots, and saw a man running toward him. The man had a large handgun in the pocket pouch of his sweatshirt. He pulled the hood over his head as he ran past Wyche, down the street to 55th Street, and then to Girard Avenue. Wyche had known Appellant and his family for years, and he later identified the man as Appellant from a photo lineup.

Dana Burke, alias Linette Flowers, was walking on Hunter Street. She saw Appellant, Robinson, and Gore on the opposite sidewalk. Burke/Flowers saw Appellant shoot Gore twice, stand over his body, and shoot the body three more times. After Appellant fled, Burke/Flowers called 911. She later identified Appellant, from whom she bought marijuana, as the shooter.

Police and medical personnel arrived on the scene. Medical personnel transported Gore to the Hospital of the University of Pennsylvania, where he was pronounced dead. According to the autopsy, three bullets struck Gore in the chest, one in his arm, and one in his hip. Two of the gunshot wounds were "shored wounds," meaning that they were consistent with a person being shot while lying on the ground. The medical examiner's office determined Gore's cause of death was multiple gunshot wounds, and the manner of death was homicide.

Robinson, Wyche, Burke, and Brown independently identified Appellant from police photo arrays. Police officers arrested Appellant, and charged him with murder, two violations of the Uniform Firearms Act, possessing an instrument of crime, and recklessly endangering another person.[2]

On August 14, 2013, after a two-day non-jury trial, the trial court convicted Appellant of all counts, the murder conviction being first-degree murder. The trial court immediately imposed a mandatory sentence of life without parole for first-degree murder and no further penalty for the other convictions. Appellant did not file post-sentence motions or an appeal. Current counsel was appointed, and the Commonwealth agreed to reinstatement of Appellant's appellate rights. This appeal *nunc pro tunc* followed.

_____

[2] 18 Pa.C.S.A. §§ 2502, 6106(a)(1), 6108, 907, and 2705, respectively.

Appellant raises two issues for our review:

A. Was the evidence insufficient as a matter of law?

B. Did the trial court err when it permitted a witness to testify after she had broken sequestration and heard the testimony of another fact witness?

Appellant's Brief at 5 (all-caps removed).

First, Appellant challenges the sufficiency of the evidence supporting his first-degree murder conviction. Regarding the sufficiency of the evidence, "our standard of review is *de novo,* however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain this burden by means of wholly circumstantial evidence.

***Commonwealth v. Johnson***, 107 A.3d 52, 66 (Pa. 2014) (internal quotations and citations omitted).

Murder is the unlawful killing of another human being with malice aforethought. ***Commonwealth v. Duffy***, 548 A.2d 1178, 1182 (Pa. 1988). First-degree murder is murder committed with the specific intent to kill. 18 Pa.C.S.A. § 2502(a); ***Johnson***, 107 A.3d at 66. A killing is intentional if

perpetrated by "means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). The Commonwealth can establish specific intent to kill through circumstantial evidence, "such as the use of a deadly weapon on a vital part of the victim's body." *Johnson*, 107 A.3d at 66 (quotation omitted).

Appellant shot Gore multiple times in the chest at close range, resulting in Gore's death. The Commonwealth's fact witnesses identified Appellant as the shooter in written statements and they chose Appellant from photo arrays. Though some of the witnesses equivocated while testifying at trial, we must accept as true their identification of Appellant as the shooter. Appellant does not contest the physical evidence tending to show Gore's manner of death was intentional murder. We hold the evidence, when considered in the light most favorable to the Commonwealth, is sufficient to support Appellant's conviction for the first-degree murder of Gore.

We reject Appellant's argument to the contrary. Appellant states, "this case is another in a long string of cases where witnesses 'go south' and their prior statements to police are admitted as substantive evidence." Appellant's Brief at 17. A witness who "goes south" initially inculpates a defendant, but then recants previous statements or refuses outright to testify at trial. Vertrice Robinson and Willie Wyche disavowed their prior signed written statements recorded by police. On cross-examination, Vertrice Robinson claimed that police officers pressured her into choosing

Appellant's picture from the photo array. N.T. Trial, 8/13/13, at 70-72, 86-87. On direct examination, Willie Wyche renounced his prior statement identifying Appellant and instead testified that Appellant "didn't do it." *Id.* at 136.

Appellant concedes, however, that the witnesses' prior statements to police identifying Appellant as the shooter are admissible for their substantive truth under the Rules of Evidence. *See* Pa.R.E. 803.1(1)(B) (providing that a prior, inconsistent, written statement of a testifying witness is admissible if the witnesses signed and adopted the statement); ***Commonwealth v. Brady***, 507 A.2d 66 (Pa. 1986) (seminal case now codified by Rule 803.1). Both Robinson and Wyche gave statements, which police recorded and which Robinson and Wyche adopted by initialing or signing.

It is on this point that Appellant's argument fails. In a challenge to the sufficiency of the evidence, we must accept as true all evidence in a light most favorable to the Commonwealth. *See Johnson*, 107 A.3d at 66. Therefore, regarding witnesses' inconsistent statements, we must accept as true the statements that inculpate Appellant. Appellant's attacks on inconsistencies in the testimony concern the weight of the evidence. As Appellant recognizes, trial counsel did not preserve a challenge to the weight of the evidence in the trial court. *See* Appellant's Brief at 18. Therefore, we cannot address this issue on appeal.

Second, Appellant argues the trial court erred in permitting Tanya Brown to testify after she violated the trial court's sequestration order. Appellant notes that Brown's compelling testimony tracked that of other Commonwealth witnesses. Appellant notes further that Brown received threats from an unknown source and was relocated by the Commonwealth prior to trial. The trial court allowed Appellant to question Brown regarding the violation of the sequestration order. Afterward, it denied Appellant's request to preclude Brown from testifying.

A trial court has discretion to order witnesses sequestered so they cannot learn of other witnesses' testimony. *See* Pa.R.E. 615. The trial court also has discretion in choosing a remedy for violation of a sequestration order. *See* Pa.R.E. 615 *Comment* (citing ***Commonwealth v. Smith***, 346 A.2d 757, 760 (Pa. 1975)). Possible remedies include a mistrial, precluding the offending witness from testifying, or instructing the jury. ***Id.*** (citing ***Commonwealth v. Scott***, 436 A.2d 161, 164 (Pa. 1981)). We review the trial court's decision to hear Brown's testimony for an abuse of discretion. ***See Commonwealth v. Schwartz***, 615 A.2d 350 (Pa. Super. 1992)). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record." ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (quoting ***Commonwealth v. Street***, 69 A.3d 628, 633 (Pa. Super. 2013)).

- 7 -

> In deciding whether to allow a witness who violates a sequestration order to testify, the trial court should consider (1) the seriousness of the violation, (2) its impact on the testimony of the witness, the probable impact on the outcome of the trial, (3) whether the witness intentionally disobeyed the order, and (4) whether the party calling the witness procured the disobedience.

*Schwartz*, 615 A.2d at 357 (internal citations omitted) (numbering added).

Here, the trial court determined that Brown was present only for some of Burke/Flowers' testimony. Importantly, it found she did not intentionally violate the sequestration order. Trial Court Rule 1925(a) Opinion, 6/23/14, at 12. Having never been a witness before, Brown wandered into the courtroom of her own volition and unescorted by any police officer or representative from the district attorney. *Id.* Furthermore, the prosecutor did not know Brown entered the courtroom, *i.e.*, the Commonwealth did not procure the violation. *Id.* On these facts, the trial court decided to allow Brown's testimony. The record reflects the trial court's thoughtful and careful consideration of the evidence pertaining to the violation of its sequestration order. The record does not show the trial court abused its discretion in denying Appellant's request. We also note that Appellant was tried by the court—not by a jury. Therefore, we may presume that the trial court, sitting as fact-finder, gave due weight to Brown's testimony in light of her unintentional violation of the sequestration order. *See Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) ("[A] a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial

statements, and disregard inadmissible evidence."). We reject Appellant's second assignment of error.

In sum, Appellant's issues raised on appeal do not entitle him to relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2015